UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ELSMITH M. HIGINIO,            ) | |
| Plaintiff,        ) | Case No. EDCV 12-1820 AJW |
| v.        ) | MEMORANDUM OF DECISION |
| CAROLYN W. COLVIN[1],        ) | |
| Acting Commissioner of the Social        ) | |
| Security Administration,        ) | |
| Defendant.        ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to the single disputed issue.

**Administrative Proceedings**

On August 4, 2009, plaintiff, then aged 42, filed benefits applications alleging that she had been disabled since July 1, 2006. [JS 2; Administrative Record ("AR") 115-123]. Plaintiff's applications were denied initially and upon reconsideration. [JS 2; AR 56-67]. Plaintiff requested an administrative hearing, which was conducted before an administrative law judge (the "ALJ") on May 31, 2011. [AR 36]. Plaintiff

---

[1] Carolyn W. Colvin is substituted as defendant in place of her predecessor in office, Michael J. Astrue. See Fed. R. Civ. P. 25(d).

was represented by counsel during the hearing and testified on her own behalf. [AR 39-44]. Testimony also was received from a vocational expert. [AR 44-45].

In a June 20, 2011 written hearing decision that constitutes the Commissioner's final decision in this matter, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset day of July 1, 2006, and that her disability insured status expired on September 20, 2009. [AR 27]. The ALJ determined that plaintiff had severe impairments consisting of obesity, high blood pressure, asthma, carpal tunnel syndrome, and lumbar radiculopathy. [AR 27]. The ALJ further found that plaintiff retained the residual functional capacity ("RFC") to perform a limited range of medium work. [AR 28]. Taking into consideration plaintiff's subjective complaints, which the ALJ found partially credible, the ALJ found that plaintiff was able to perform her past relevant work as a customer service clerk, order clerk, receptionist, and teller. [AR 31]. Therefore, the ALJ concluded that plaintiff was not disabled at any time from July 1, 2006, through the date of her decision. [AR 32].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r, Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Statement of Disputed Issue**

The only disputed issue is whether the ALJ properly considered plaintiff's testimony. [JS 4].

**Discussion**

Plaintiff contends that the ALJ improperly rejected her testimony about her subjective symptoms.

[JS 4-15, 20].

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of the claimant's subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony she considers not credible, she must provide specific, convincing reasons for doing so. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the claimant's subjective testimony without providing "clear and convincing reasons"). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented," including the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity, and environmental conditions; (4) the type, dosage, effectiveness and adverse side effects of any pain medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other measures used by the claimant to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional restrictions due to such symptoms. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (clarifying the Commissioner's policy regarding the evaluation of pain and other symptoms). The ALJ also may employ "ordinary techniques of credibility evaluation," considering such factors as (8) the claimant's reputation for truthfulness; (9) inconsistencies within the claimant's testimony, or between the claimant's testimony and the claimant's conduct; (10) a lack of candor by the claimant regarding matters other than the claimant's subjective symptoms; (11) the claimant's work record; and (12) information from physicians, relatives, or

friends concerning the nature, severity, and effect of the claimant's symptoms. See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

Because there was no evidence of malingering, the ALJ was required to articulate specific, clear, and convincing reasons to support her negative credibility finding.

In her hearing decision, the ALJ summarized plaintiff's subjective symptom testimony as follows[2]:

> The [plaintiff] testified she last worked in 2004. [Plaintiff] stated she could sit and/or stand for ten minutes. She indicated she could walk for five to ten minutes. The [plaintiff] alleged pain in her hips and in her legs. She stated she was in the hospital two years prior because of asthma. The [plaintiff] alleged carpal tunnel syndrome in both wrists. She claimed she had pain in her arms to the shoulder. She stated she had elbow flare ups. She indicated she used prescribed braces for her carpal tunnel. The [plaintiff] testified medication side effects included drowsiness. She claimed she spent most of the day sleeping. The [plaintiff] stated her four children lived [with] her, aged seven to 19.

[AR 29].

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause some of plaintiff's alleged symptoms, but that her subjective complaints were not fully credible. [AR 28, 30]. Specifically, the ALJ found that plaintiff could lift and carry 25 pounds frequently and 50 pounds occasionally, frequently use her hands for handling and fingering, and frequently perform postural activities. [AR 28]. The ALJ also found that plaintiff's exposure to fumes and environmental irritants should be limited. [AR 28]. The ALJ articulated specific, clear, and convincing reasons to support her partial rejection of plaintiff's subjective complaints.

Plaintiff first contends that the ALJ erred because "a rejection of a claimant's testimony based on a lack of objective evidence is always legally insufficient." [JS 9]. This is an incorrect statement of the law. The ALJ permissibly considered the lack of objective medical evidence corroborating the alleged severity of plaintiff's subjective symptoms as one factor, among others, supporting the ALJ's credibility finding. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting

---

[2] Plaintiff did not challenge the accuracy of the ALJ's summary of plaintiff's subjective testimony. [See JS 10].

pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

In particular, the ALJ relied on the objective evidence of a series of x-rays and MRIs. For example, the ALJ noted that a January 5, 2007 x-ray showed a "[n]ormal lumbosacral spine" with the exception of possible muscle spasm with straightening of lordosis. [AR 272]. An x-ray of plaintiff's right hip on the same day was unremarkable. [AR 274]. The ALJ noted that plaintiff was assessed with possible lumbar radiculopathy and underlying peripheral neuropathy at a neurology consultation on March 13, 2007. [AR 181-182]. Plaintiff was referred for an electromyography ("EMG") nerve conduction study to confirm the diagnosis. [AR 182]. The EMG was conducted on March 27, 2007, and it revealed chronic lumbar radiculopathy affecting the right L4 nerve root and underlying distal polyneuropathy. [AR 194]. An April 26, 2007 MRI of plaintiff's lumbar spine revealed a straightening of the normal lordotic curvature, usually secondary to muscular spasm, but no evidence of central or foraminal stenosis (narrowing of the spinal canal). [AR 270]. The ALJ also discussed plaintiff's two day hospitalization in May 2007 for gastroenteritis, dehydration, and weakness, and noted that a September 28, 2007 chest x-ray was normal. [AR 30]. X-rays of plaintiff's knees taken on December 14, 2010 were unremarkable. [AR 296, 299]. On that same day, multiple x-rays were taken of plaintiff's lumbar spine and dorsal spine, and the impression was normal. [AR 297-298]. The ALJ permissibly considered this objective evidence in assessing plaintiff's credibility. Burch, 400 F.3d at 681; Cortez v. Astrue, 2012 WL 253961, at *7 (C.D. Cal. Jan. 27, 2012) (holding that the ALJ properly relied on an MRI, x-rays, and other test results that were "normal" in discounting the claimant's subjective symptom testimony).

Plaintiff next contends that the ALJ erred in discrediting her based on her daily activities, and that the ALJ failed to consider the differences between plaintiff's daily activities and her ability to work eight hours a day, five days a week. [JS at 11]. This contention is without merit because the ALJ did not base her credibility determination on plaintiff's ability to carry on with her daily activities. Lopez v. Astrue, 2012 WL 1020230, at *4 n.3 (C.D. Cal. Mar. 26, 2012) (rejecting a similar argument where "the ALJ did not base his credibility determination on plaintiff's ability to engage in certain daily activities").

Plaintiff also contends that it was improper for the ALJ to rely on her observations of plaintiff at the hearing. [JS 12]. While an ALJ may not "rely on [her] own observations of the claimant at the hearing as the sole reason for rejecting the claimant's complaints," she may use "ordinary techniques of credibility

evaluation," including her observations of the claimant's demeanor, to evaluate the credibility of a claimant's subjective allegations. Tonapetyan, 242 F.3d at 1148 (citing Fair, 885 F.2d at 604 n.5); Bunnell, 947 F.2d at 346. Here, the ALJ noted that plaintiff

> betrayed no evidence of pain or discomfort while testifying at the 30-minute hearing. While the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of pain on a day-to-day basis, the apparent lack of discomfort during the hearing is given some slight weight in reaching the conclusion regarding the credibility of the claimant's allegations and the claimant's [RFC].

[AR 29]. There was nothing improper about the ALJ's noting plaintiff's demeanor during the hearing. While the ALJ may have erred in identifying the length of the hearing as 30 minutes rather than the 13 minutes reflected in the transcript, she acknowledged that the hearing was "short-lived" and said that she was giving this factor only "slight weight." See, e.g., Bleski v. Astrue, 2011 WL 3859720, at *16 (D. Nev. July 19, 2011) (noting that although the hearing transcript indicated that the hearing was shorter in duration than the ALJ stated, "presumably the participants arrived and were seated before the hearing formally began," and that the discrepancy did not alter the validity of the ALJ's observation that the claimant remained seated longer than he said he could), report and recommendation adopted by 2011 WL 3875324 (D. Nev. Aug. 30, 2011). While plaintiff's demeanor had limited probative value in evaluating her credibility, it was not improper for the ALJ to consider it. See Morgan, 169 F.3d at 600 ("The inclusion of the ALJ's personal observations does not render the decision improper."); SSR 96-7p, 1996 WL 374186, at *5 ("In instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements.").

Finally, plaintiff challenges the ALJ's conclusion that plaintiff's treatment history undermined her allegations of disabling symptoms because it was essentially routine or conservative in nature, and because plaintiff's medically determinable impairments were controlled by medication. [AR 29]. For example, the ALJ noted that in an August 2009 pain questionnaire, plaintiff alleged severe daily pain in her side, back, hips, and pelvis, but she also said that the pain lasts "until I take my medication" and that her medication "help[s] to bear the pain." [AR 29, 149-150]. Plaintiff also said that her back brace and a heating pad helped

relieve her pain. [AR 29, 150]. The ALJ permissibly relied on those statements in rejecting the alleged severity of plaintiff's pain. See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); Warre v. Comm'r, Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2005) ("Impairments that can be controlled effectively with medication are not disabling."); Armstrong v. Colvin, 2013 WL 3381352, at *5 (C.D. Cal. July 8, 2013) (holding that the ALJ properly relied on the claimant's conservative treatment, including use of a heating pad, to discount her subjective pain complaints); Benavides v. Astrue, 2011 WL 4406437, at *5 (N.D. Cal. Sept. 21, 2011) (holding that the claimant's response to conservative treatment, including the use of a back brace, supported the ALJ's finding that the claimant's subjective complaints were not entirely credible).

Plaintiff contends that her treatment was not "conservative" because she has been prescribed the narcotic pain medications Percocet (oxycodone and acetaminophen), Vicodin (hydrocodone and acetaminiphen), and tramadol. [JS 12-13 (citing AR 41, 149, 332, 334)]. Two of the medical records plaintiff cites are part of a treatment report from Global Pain Care dated September 27, 2011, about three months after the date of the ALJ's decision. [AR 332, 334]. The Appeals Council reviewed that report and concluded that it did not warrant any change in the ALJ's decision. [AR 7-11]. See 20 C.F.R. §§ 404.970, 416.1470 (stating that the Appeals Council shall consider additional evidence that relates to the period on or before the date of the ALJ's decision, and will review the case if it finds that the ALJ's decision is contrary to the weight of the evidence currently of record). The Global Pain Care report states that plaintiff said that she had taken Vicodin in the past, and that she was started on Percocet for complaints of chronic pain and examination findings of tenderness in the lumbar spine and pain on spinal flexion and extension. [AR 332-334]. Plaintiff also cites her June 2011 hearing testimony that she was taking Vicodin and her August 2009 pain questionnaire stating that she was taking tramadol. [AR 41, 149]. Plaintiff has not pointed to evidence in the record documenting who prescribed tramadol or Vicodin, for how long, or the indications for prescribing those medications. The fact that plaintiff may have been prescribed tramadol and Vicodin at some point and was prescribed Percocet a few months after the hearing does not negate the reasonableness of the ALJ's inference that her treatment as a whole during the relevant period (July 1, 2006 through June 20, 2011) was conservative and routine. Furthermore, the ALJ permissibly relied on plaintiff's

7

testimony that her medication helped relieve her pain. [AR 29, 41-44, 149-151].

The ALJ also concluded that plaintiff's symptoms were not as severe as she alleged because she was not referred to a specialist. [AR 29]. Plaintiff contends that the ALJ's reasoning was faulty because she saw a pain management specialist at Global Pain Care, but plaintiff fails to mention that her visit to Global Pain Care took place three to five months after the date of the ALJ's decision. [See JS 12-13 (citing AR 325-336)]. Furthermore, the Global Pain Care treatment notes indicate that plaintiff's pain was "relieved by medications" and that the medication was "helping." [AR 326, 329]. See Warre, 439 F.3d at 1006. Notwithstanding the Global Pain Care reports, substantial evidence supports the ALJ's conclusion that the nature and extent of plaintiff's treatment are not commensurate with the alleged severity of her subjective symptoms.

Plaintiff fails to discuss, or even acknowledge, the ALJ's final reason for finding her not credible: the inconsistency between her subjective claims and the opinions of the examining and nonexamining physicians. Therefore, plaintiff has waived any challenge to this remaining aspect of the ALJ's credibility finding. See Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (holding that claimant waived issues because he did not raise those issues before the district court); Bergfeld v. Barnhart, 361 F. Supp. 2d 1102, 1110 (D. Ariz. 2005) ("A reviewing federal court will only address the issues raised by the claimant in his appeal from the ALJ's decision.").

Notwithstanding plaintiff's waiver of the issue, the ALJ was entitled to consider the inconsistencies between plaintiff's subjective allegations and the conclusions of the examining and nonexamining physicians. See Light, 119 F.3d at 792 (stating that the ALJ may consider information from physicians regarding the nature and effect of a claimant's symptoms). For example, the ALJ described the September 23, 2009 consultative evaluation by Dr. Bryan To. [AR 30]. Specifically, the ALJ noted Dr. To's findings that plaintiff ambulated with a normal gait, her lungs were normal with no appreciable wheezing, rhonchi, or rubs; her range of motion in all extremities appeared normal despite subjective range of motion pain; and her straight-leg raise tests were negative bilaterally. [AR 279-280]. Dr. To did not conclude plaintiff was disabled, but rather found that she retained the ability to lift and/or carry 50 pounds occasionally and 25 pounds frequently; could stand and/or walk six hours out of an eight-hour workday; had no sitting limitations; could frequently walk on uneven terrain, climb ladders, or work with heights; could frequently

use her hands for fine and gross manipulative movements; and could frequently perform postural activities of bending, kneeling, stooping, crawling, and crouching. [AR 281]. The ALJ also gave significant weight to the 2009 and 2010 reports of nonexaming physicians Dr. G. Taylor-Holmes and Dr. M. Sohn [AR 284-293], which were all generally consistent in assessing that plaintiff was able to perform medium work.

The ALJ stated that no single assessment was completely adopted, but that she gave plaintiff "the benefit of the doubt . . . [by ] adopt[ing] those specific restrictions on a function-by-function basis that are best supported by the objective evidence as a whole." [AR 31]. The ALJ then correctly noted that "[t]here is no medical source statement from any source that suggests functional limitations more restrictive than the [RFC] found in this decision. There is no medical source statement of functional limitations from any treating source." [AR 31]. The ALJ could properly consider those physicians' assessments in weighing plaintiff's credibility and the lack of any assessment of plaintiff's functional limitations by a treating source. Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (holding that the ALJ did not err in discounting the claimant's assertions that his back impairment precluded employment where no treating or examining doctor stated or implied that the claimant's impairments were disabling, and where their reports did not disclose findings indicative of disability).

The ALJ's reasons for partially rejecting plaintiff's subjective testimony were specific, clear, and convincing, and therefore the ALJ did not err in evaluating the credibility of plaintiff's subjective complaints.

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is **affirmed**.

**IT IS SO ORDERED.**

January 7, 2014

_____
ANDREW J. WISTRICH
United States Magistrate Judge